————o————

GRANVILLE SMITH, *et al.*, Respondents, *vs.* ELI G. PARIS, *et al.*, Appellants.

1. *Administrator—Note given by, under mistake as to amount of assets.—*Certain unauthorized executions had been issued from the Probate Court on behalf of the creditors of an estate, against the individual property of an administra tor, for sums claimed to be due them by him as administrator. Under the pressure of threatened levy, and under a mutual misapprehension as to the extent and value of the assets in his hands, the administrator gave his individual notes for specified sums, payable partly in cash, and partly on time. No abatement in the amount of the claims was made, and no compromise effected further than the granting of an extension of time. In consideration of the notes, the creditors surrendered and receipted for their claims. It afterward tran spired that the amount of assets in his hands had been miscalculated and over-estimated in the Probate Court, and the amount charged against him, was re-duced accordingly by order of court. Suit having been brought against him upon the notes, *Held,* that the administrator might properly show in defense, that the notes were given under a mistaken impression of the extent of means in his hands ; and, that in point of fact, there were no trust assets to which plaintiff had a right to look for payment. And *semble,* that *defendant might* have no claim to the interposition of equity, because of his own negligence, except for the fact that the levies on his own property placed him under duress.

The above case is not one hinging on a compromise of contested claims be-tween parties, where the law or the facts are uncertain.

*Appeal from Greene Circuit Court.*

*N. Bray*, for Appellants.

I. Parties making a mistake in matters of fact are not held bound by acts committed by them under such mistake. (Marshall vs. Collett, 1 Y. & C. 238 ; Groves vs. Perkins, 6 Sim., 576 ; Currie vs. Steele, 2 Sandford, S. C., 542 ; Turner vs. Turner, 2 Ch. R., 81 ; Bingham vs. Bingham, 1 Ves., 127 ; Gee vs. Spenser, 1 Verm., 32 ; 1 Sto. Eq., 8 Ed., § 138, and note 1 ; §§ 138, 140, *Ibid*, 141 ; *Id*. 147.)

*J. P. Ellis*, for Respondents.

I. The compromise of a doubtful claim, or the relinquishment of a pending suit or proceeding, is a good consideration for a promise. (Stoddard vs. Mix, 14 Conn., 12 ; Paris vs. Dexter, 15 Verm. 379.) And even though there was no foundation for the proceeding, and no cause of action. (Morey vs. Town of Newfane, 8 Barb., 653 ; Russell vs. Cook, 3 Hill, 504 ; Stewart vs. Ahrenfeldt, 4 Denio, 189 ; O'Keson vs. Barclay, 2 Penn., 531 ; Holcomb vs. Stimpson, 8 Verm., 141 ; Stephens vs. Spiers, 25 Mo., 386 ; 1 Sto. Eq. Jur., § 131.)

II. A court of equity will not relieve a party from the consequences of a mistake of fact, if by reasonable diligence he could have obtained knowledge of the fact. Equity will not encourage culpable negligence. (1 Sto. Eq. Jur., §§ 146, 150 ; Weed vs. Terry, 2 Dougl. (Mich.,) 349.)

III. In order to relieve against a mistake of fact, the court must be in such a situation, as to be able to place the parties in *statu quo*. (1 Sto. Eq. Jur., (Redf. Ed.,) § 138 ) This cannot be done in this case ; plaintiffs are no longer creditors of the estate of Young ; that estate holds their receipt in full.

NAPTON, Judge, delivered the opinion of the court.

This suit was on a note. The answer admitted the execution of the note, but set up as a defense, that it was made by defendant under ignorance of facts ; that he was administrator of the estate of one Young, and he supposed that there were assets sufficient to pay all demands in the fifth class, but that he was mistaken in this ; that the amount of assets, charged

against him as administrator, was not correct, and the amount credited as paid out by him was not correct; that he has ascertained since the said note was given, that the order of the court for distribution among creditors was erroneous, and that it has been corrected in said court; that he has already paid plaintiffs all they would be entitled to upon a correction of the mistake; and therefore there was no consideration for the note sued on.

The replication denies that the note was given upon a mistake of facts, or that the consideration of the note was as stated in the plea, and avers that the plaintiffs had a claim against the estate of Young, amounting to $6,994.71; that the defendant was administrator, and the court having probate jurisdiction ordered the payment of said claim; that they afterwards caused an execution to be issued on this order against the goods and chattels, lands and tenements of said Paris, and when said property was about to be sold under said execution, the said Paris offered to compromise; and to effect this, offered to execute his note with security for the amount specified, payable in twelve months, if the plaintiffs would accept the same in payment of their claim against said estate of Young, and release his (Paris') property, which was accepted; and the note sued on was then and there made, and the plaintiffs did stop the execution against said Paris' property, and the same was not sold, and they delivered up to defendant Paris their claims against said Young's estate, and receipted for them; and that said Paris, defendant, afterwards used said receipts as vouchers in his settlement.

The petition denies all knowledge concerning subsequent settlements of said Paris with the court of probate, and avers that this note estopped Paris from setting up any alleged errors.

There was a motion to strike out this replication, or the most of it, which was overruled.

At the trial, the defendant offered to proceed with his defense, and introduce testimony to show mistake and want of consideration, but the court did not allow this, and the plain

Smith, et al. v. Paris, et al.

tiffs were first allowed to establish by proof the facts asserted in their replication.

The evidence shows, that the defendant, Paris, had a consultation with the lawyers of the various claimants against Young's estate, who had issued executions against him, which were levied on his real and personal estate, and proposed to them to pay off a certain proportion of their demands in money, and give his notes for the remainder, with 10 per cent. interest, on twelve months' time, and giving security, upon condition that the claimants would give up their demands, which he could use as vouchers in his settlement with the court. This proposal of Paris was accepted. The demands were given up and receipted in full, and notes were given by Paris, and the note sued on is one of them. The executions were stopped.

The defendant then offered certain records of the Probate Court. The following is the entry on 21st Feb., 1871 : "Now at this day, it appearing to the court that Eli G. Paris, administrator of estate of J. Young, stands charged in the books for the record of Inventories, with an aggregate amount of $18,226.03, when he should be charged with only the sum of $15,397.98, and it also appearing, that a similar error has occurred in the ledger and in record " B," p. 1, of this court, in filing said Inventory, and it further appearing, that said administrator is charged in said ledger with $1,822.60 interest, and with $2,950.00 for sale of land to John Holland, and the further sum of $1,000 for land sold to John Holland, and with $1,093.00 for land sold to W. B. Edwards. It is therefore ordered by the court, that the clerk of this court add up said Inventory, and correct the records in all particulars, so as to conform to said Inventory, and that he strike the item of $1,822.60, on said Ledger as interest, off said records, as also the charges of $2,950.00, and $1,000.00 for lands sold to John Holland, and that the amount charged as land sold to W. B. Edwards be changed to read $1,066.66, so that the whole may be made to conform to the original Inventory and sale bills made by said administrator."

This record was offered to show a mistake of $3,197.00 against Paris, that as originally added up it made $18.385.00, when it should have been $15,188.00; this evidence was objected to and excluded.

There were various other proceedings in the Probate Court offered as evidence, but ruled irrelevant. These records showed, that the demands in the 5th class amounted to $23.015,00. The defendant then offered in evidence the order of the Probate Court, allowing an appeal from the order of said court, ordering him to pay all claims in the 5th class. The order was as follows: "In the matter of the estate of John Young, deceased, for good cause shown, it is ordered by the court, that Eli G. Paris, administrator, etc., be allowed to file his affidavit and bond for an appeal and bill of exceptions in vacation from the decision of this court overruling the motion of said administrator to set aside order for the payment of the whole of the demands in the 5th class of demands."

This was excluded. There was also offered a motion to set aside the order to pay debts in the 5th class, and to quash executions on them, which was overruled in the Probate Court. The defendant then offered in evidence the order of the Probate Court, granting an appeal from their order to pay debts in the 5th class; which order is as follows :

"Now at this day comes said administrator, and files here his affidavit for an appeal to the Circuit Court from an order of this court to pay the debts in the 5th class, which appeal is by the court granted." This evidence was excluded as irrelevant. The following entries were also offered : "Now at this day comes said administrator, and by leave of the court files his motion to quash execution issued against him, and to set aside the order for the payment of debts in the 5th class." This order is as follows: "Aug. 21, 1865, ordered that the administrator of the estate of John Young, deceased, pay all demands against said estate in the 5th class."

The motion to set aside order, and to quash execution, was overruled. This appeal seems, from the testimony of the clerk of the Circuit Court, not to have been disposed of.

The defendant then offered Paris as a witness, who said it was part of the agreement he made, that the suit of Headly should be dismissed, and offered to prove by him, that his attornies informed him, that there were sufficient assets in his hands, at the time of the execution of said note sued on, to pay off all demands in 5th class; that he was not aware of the mistake in computation of the inventory, nor that he had been charged with sales of lands, which had been disallowed by the court, and that he executed the notes under a mistake of fact, believing there were sufficient assets in his hands to pay the 5th class claims; that he would not have executed the notes, if he had known of the errors in the Inventory and the settlements, and in the amount charged against him for sale of lands. This evidence was excluded.

The defendant asked the following declaration of law: "That where notes are given for an antecedent demand, which had been allowed in the Probate Court against the administrator, the maker of the note, and such note is given for the amount of the demand and interest; this is the real consideration of the note; and the fact that defendant Paris' land had been levied on, by virtue of an execution from the Probate Court, and said note was executed for the original demand allowed against him as administrator, and that at the time of executing it, there was an agreement between Paris, administrator, and plaintiffs, that they would stop executions, etc., does not alter the consideration of said note."

There were various other instructions in relation to the Headly claim, which seem not to be important, as that claim or suit was really dismissed.

There were declarations of law also offered in regard to the issue of executions without a demand on the administrator, but there was no evidence to support them, and they were properly refused for this reason. There were the usual motions for new trial and in arrest, and exceptions were taken to every decision of the court.

Without expressing any opinion as to the order of introducing evidence in this case, it is plain that the merits of the

case depended upon the theory adopted by the court on the trial, and which was carried out to the end, that a mistake of fact was no defense to a note, if the fact was one which the defendant ought to have known more about than the plaintiff, or one of which both the parties were equally ignorant. There was undoubtedly a degree of negligence in the conduct of defendant which seems difficult to account for. He was a mere trustee, and had been ordered by the court to pay certain claims in that capacity. He appealed from the order, and this appeal would appear to indicate, that at that date he was not satisfied that the liability imposed on him was just, yet afterwards, and when executions were out against him, which were clearly illegal, he proposes to pay a certain amount on the claims, and give his notes with security for the remainder due. This, he says,was done by him without any knowledge, that in his settlement the accounts were wrongly calculated, and that mistakes had been made against him, showing the assets of the estate greater by several thousand dollars than they really were. To prove this, he offers the records of the Probate Court, from which it appears, that such mistakes were committed and subsequently corrected in that court. These records were all rejected, on the theory, that they were irrelevant, and that correcting the mistake it was still no defense, on the ground, I presume, that the mistake was one which the defendant ought to have known, he being administrator, and that it was gross negligence for him not to have informed himself.

On this state of facts it is not very clear, that the defendant was entitled to any relief in equity; but there is a feature of the transaction, which, to some extent, relieves him from this imputation of gross negligence. When his appeal from the order of the Probate Court was made, and his affidavit filed (no bond being required by law from an administrator), it operated as a *supersedeas*, and no executions should have been issued. In point of fact executions were issued and levied on the defendant's land, and though he attempted to have these executions quashed, he failed. The compromise was then proposed by him, and the note sued on was given.

Under these circumstances, the defendant is entitled to some leniency in examining his acts. The consideration for the notes was ample, if the executions had been valid. There was also a surrender of the claims against Young's estate.

But it is obvious, that the defendant was at a disadvantage, and was hardly in a condition to exercise his judgment, when he met the creditors of the estate. Sales under execution might carry the title, or at least subject him to troublesome and expensive litigation. That a fair compromise will be sustained by the courts, notwithstanding errors of law or mistake of facts, of which the party complaining could by reasonable diligence have informed himself, is no doubt the law of Equity Courts; but the application of the general doctrine to particular cases is not uniform, and a very slight change of circumstances may operate to change the equitable rights of parties.

It does not follow because a compromise is effected, that mistakes made by either party may not be corrected in compromises, as well as in other contracts, if they are such mistakes as form a basis of equitable relief. In this case the defendant was a trustee, acting for others; he was not responsible any further than the estate in his hands made him responsible. The compromise made by him was made in his capacity as trustee, though it ended in an assumption of individual responsibility, and although there was manifest negligence on his part in his reports and settlements with the Probate Court, and in not seeing to their correction in time, yet, if the note in suit voluntarily given as it was, was given under a mistaken impression of the extent of the means in his hands, which he held merely in trust for others, it would be a harsh application of the law concerning negligence to compel its payment, especially when it could hardly be said that the defendant was free to act, being pressed by executions against his individual property illegally issued in favor of the plaintiffs and others.

It is said that no relief can be granted in this case, because the creditors of Young surrendered to defendant their claims

against the estate of Young, and receipted for them, and therefore parties cannot be placed in *statu quo*. But it is clear, that if the consideration of this surrender fails, the claims are not receipted.

The doctrine of Courts of Equity, in regard to compromises of contested claims, has no application in this case. There was no dispute about the validity of the plaintiff's claims; there was no dispute about the liability of Young's estate for their payment. There was no dispute or difference of opinion about the law or the facts so far as they were known to both parties at the time. The compromise offered by the defendant was in fact no compromise, so far as the validity of the claims and their amount was concerned. He simply agrees to pay them partly in cash and partly in notes. They were not claims against him, except in his capacity as administrator; but as they had been allowed, and an order of court had been made for their immediate payment, and executions had been issued on this order, though appealed from, the defendant's property was liable to be sold to pay them. He pays them partly in cash, and gives his notes for the remainder. The only compromise he effects is to get time. No abatement of amount of claims is made. The defendant agrees to pay them, supposing he had ample assets of the estate to do so, and he proposed to show that on this latter point he was mistaken, and that the mistake was owing to a miscalculation of his Inventory and sale accounts in the Probate Court, afterwards corrected. This case has nothing to do with compromises of contested claims between parties in which it is uncertain how the law is, or the facts are.

The Circuit Court in the trial of this case seems to have proceeded in all its rulings on the ground that the defendant had no right to the aid of the court's equitable power, because of his culpable negligence.

We are not disposed to say that this view was wrong, had it not been for the fact that defendant, when he made this note and others, was under a sort of duress, brought about by levies on his own property to pay trust claims.

This fact has a strong tendency to establish the absence of that fairness and equal footing, upon which parties should meet in the adjustment of conflicting claims, and may set off the negligence of defendant in not seeing to a correction of his settlements in the Probate Court.

We shall reverse the judgment and remand the case, with a view that the evidence on both sides may be heard.

Judges Wagner and Vories concur; Judges Adams and Sherwood did not sit.